**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**LORI CLEGG**                                                                                                   **PLAINTIFF**

**v.**                                        **NO. 4:05CV00473-WRW**

**ARKANSAS DEPARTMENT OF**
**CORRECTIONS, LARRY NORRIS, in**
**his Official Capacity; MARVIN EVANS, JR.,**
**in his Individual and Official Capacity; ROGER**
**CAMERON, in his Individual and Official Capacity;**
**CEDRIC ALBRITTON, in his Individual and Official**
**Capacity**                                                                                              **DEFENDANTS**

<u>**ORDER**</u>

        Plaintiff brought suit against the Arkansas Department of Corrections ("ADC"), its Director

Larry Norris, Warden Marvin Evans, Jr, Substance Abuse Treatment Program Manager ("SATP")

Roger Cameron, and against SATP Coordinator Cedric Albritton, alleging that she was

discriminated against based on her race and sex and retaliated against in violation of Title XII, 42

U.S.C. § 1983, Arkansas Civil Rights Act ("ACRA"),[1] and the Uniform Services Employment and

Re-employment Act ("USERRA").[2]   Defendants Norris and Evans have since been dismissed from

suit by motion of Plaintiff.[3]   The remaining Defendants have moved for summary judgment.

---

[1] Ark. Code Ann. §16-123-101.

[2] 38 U.S.C. §§ 4311-4312.

[3] Doc. No. 30.

I.      **History**

Plaintiff, an African-American female, began work at the ADC in 1997.  In February 2003, she was employed as the SATP[4] Coordinator at the Tucker maximum security unit when she was activated for military duty.  During her military leave, Plaintiff was deployed to Iraq and was absent from the ADC a total of 18 months.

Plaintiff was classified as a Grade 20 employee with a rate of pay of $14.7789/hour when she left for active duty.  When she returned to work on September 7, 2004, Plaintiff was still considered a Grade 20 employee, but her rate of pay had increased to $15.8373, due to two cost-of-living-adjustments during her absence.

Upon her return to work in September 2004, Plaintiff claims her position had been filled by a male employee, Defendant Albritton,[5] and that she was not returned to her same or equivalent position or rate of pay. Plaintiff also argues that she was subjected to retaliation "by being denied access to the keys for the filing cabinet, phone, phone codes, [and to] classification meetings. "[6] Plaintiff filed a complaint with the EEOC on December 9, 2004, alleging racial and sexual discrimination and retaliation for the period between July 13, 2004 to October 14, 2004.

Plaintiff filed a second claim with the EEOC on April 5, 2005, alleging that by being given an adverse performance evaluation, denied training, and subjected to different terms and conditions

---

[4]Substance Abuse Treatment Program

[5]Mr. Albritton is an African-American.

[6]Doc. No. 14-6.

of employment compared to her co-workers, she was retaliated against as a result of her first EEOC filing.[7]  Plaintiff did not allege race or sex discrimination in the second EEOC complaint.

## II.    Standard of Review

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[8]  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[9]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[10]  Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[11]  I must view the facts in the light most favorable to the party opposing the motion.[12]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the

---

[7]Doc. No. 2.

[8]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed R. Civ. P. 56.

[9]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[10]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[11]*Id.* at 728.

[12]*Id.* at 727-28.

record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[13]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[14]

## III.    Analysis

Plaintiff asserts that she suffered race and sex discrimination and retaliation in violation of Title VII, ACRA,  and § 1983.  The burdens of proof for claims brought under Title VII and § 1983 are identical.[15]  Claims under ACRA receive the same analysis as Title VII claims.[16]  Therefore, this Order will treat the Title VII claims as encompassing the claims under § 1983 and ACRA.

### A.    Eleventh Amendment

The Eleventh Amendment to the U.S. Constitution prohibits a plaintiff from suing a state, state agency, or state employee in the employee's official capacity for damages, except insofar as the state or the Congress of the United States has abrogated the state's sovereign immunity.[17]  The ADC and Defendants Cameron and Albritton, in their official capacities, are immune from suit for

---

[13]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (*quoting City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[14]*Anderson*, 477 U.S. at 248.

[15]*See Roark v. City of Hazen*, 189 F.3d 758, 761 (8th Cir. 1999); *see also Chambers v. Wynne Sch. Dist.*, 909 F.2d 1214, 1216 (8th Cir. 1990).

[16]Ark. Code Ann. § 16-123-105 (Supp. 2001).

[17]*See*, *e.g.*, *Morstad v. Department of Corrections and Rehabilitation*, 147 F.3d 741, 744 (8th Cir. 1998) ([A]bsent a waiver, the Eleventh Amendment immunizes the state and its officials from § 1983 liability.).

4

money damages under both § 1983 and ACRA.[18]  Prospective injunctive relief would be the only remedy available to Plaintiff against the ADC and Defendants Cameron and Albritton in their official capacities under these causes of action.[19]  Accordingly, all claims under § 1983 and ACRA for money damages against the ADC and official capacity defendants are DISMISSED.

Under Title VII, a public official may be sued in his official capacity.[20]  Title VII is a statutory expression of traditional *respondeat superior* liability. Supervisors' actions that fall within the scope of their employment or within their official duties satisfy the definition of employer under Title VII.  Consequently, supervisors may be named as party defendants in their official capacity.[21]

In addition, Title VII claims against the state and its  agencies are not barred by the Eleventh Amendment.   Title VII abrogates a states' Eleventh Amendment immunity in accordance with § 5 of the Fourteenth Amendment.[22]   In this case, Plaintiff's supervisors have been named in both their individual and official capacities.   Under Title VII, an employee is protected against employer retaliation for opposing any practice that the employee reasonably believes to be a violation of Title

---

[18]*Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

[19]*Coller v. State of Missouri, Department of Economic Development*, 965 F. Supp. 1270, 1276 (W.D. Mo. 1997);  *Pennhurst*, 465 U.S. at 102.

[20] *Harvey v. Blake*, 913 F.2d 226, 227-28 (5th Cir. 1990); *In re Montgomery County*, 215 F.3d 367, 372 -373 (3rd Cir.  2000).

[21]*Harvey*, 913 F.2d at 227;

[22]*Okruhlik v. University of Arkansas*, 255 F.3d 615 (8th Cir. 2001);  *Maitland v. University of Minnesota*, 260 F.3d 959 (8th Cir. 2001).

VII.[23]  Further, Title VII is designed to protect individuals, such as Plaintiff, from discriminatory animus and all its inequitable manifestations.

Defendants Cameron and Albritton argue that they cannot be held individually liable under Title VII.  The Eighth Circuit has held that supervisory employees are not individually liable under Title VII.[24]  Accordingly, Plaintiffs Title VII claims are DISMISSED against Defendants Cameron and Albritton sued in their individual capacity.  Moreover, because Cameron and Albritton are not Plaintiff's employers, Plaintiff's ACRA claims are DISMISSED against them because liability under the statute does not exist.[25]

State officers may be held personally liable for money damages under § 1983 based upon actions taken in their official capacities.[26]  State officials, sued in their individual capacities, are "persons" within the meaning of §1983.  Unlike official-capacity defendants -- who are not "persons" because they assume the identity of the government that employs them -- officers sued in their personal capacity come to the court as individuals and  thus fit comfortably within the statutory term "person."   The Eleventh Amendment does not bar § 1983 personal-capacity suits against state officials in federal court. Thus, Plaintiff's § 1983 claims for money damages remain against Defendants Cameron and Albritton in their individual capacity.[27]

---

[23] 42 U.S.C.  § 2000e-3(a);  *McNeail-Tunstall v. Marsh USA*, 307 F. Supp. 2d  955 (W.D. Tenn. 2004).

[24]*Bonomolo-Hagen v. Clay Central-Everly  Community Sch. Dist.*, 121 F. 3d 446-447 (8th Cir. 1997).

[25]Ark. Code Ann. § 16-123-102(5).

[26]*Hafer v. Melo*, 502 U.S. 21, 25 (1991).

[27]But, see discussion below - Plaintiff fails to submit sufficient evidence of an adverse employment action to overcome a motion for summary judgment on this point.

### B.        Adverse Employment Action

Title VII prohibits an employer from treating an employee differently with respect to the "terms, conditions, or privileges of employment" because of her race.[28]  "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination."[29]  In order to establish a *prima facie* case of racial disparate treatment, the plaintiff must prove (1) that she is a member of a protected class; (2) that she was qualified to perform his job; (3) that she suffered an adverse employment action; and (4) that the defendant treated similarly situated, non-minority employees more favorably.[30]

There is no question that Plaintiff, an African-American, is a member of a protected class. Nor does Defendant dispute that Plaintiff was qualified to perform her job.  Instead, the question is whether Plaintiff suffered an adverse employment action and whether similarly situated, non-minority employees were treated more favorably.  Plaintiff has not presented sufficient evidence to withstand summary judgment.

Plaintiff primarily raises the following as proof of discrimination: (1) Defendant Cameron calling her before she returned to work; (2) no one being present to welcome her back to work or to orient her when she returned; (3) initially having limited access to files and phone upon her return; (4) denial of training; and (5) receiving a poor evaluation four months after her return.

Plaintiff received a phone call from Defendant Cameron in July 2004.  Cameron maintains that he called Plaintiff before she returned to work to inform her that drug-abuse treatment

---

[28]  42 U.S.C. § 2000e-2(a)(1).

[29]  *Bradley*, 232 F.3d at 633.

[30]*LaCroix v. Sears, Roebuck & Co.*, 240 F.3d 688, 693 (8th Cir. 2001).

certification had become a prerequisite for holding the SATP position while she was away.[31] Cameron explained that Plaintiff needed to get her certification paperwork taken care of quickly in order to avoid additional testing by the certification board.   When Cameron called, Plaintiff requested and was granted a ninety day extension from the Arkansas Substance Abuse Certification Board to apply for her certification after her return from active duty.[32]  Moreover, although Plaintiff did not receive her certification until November 2004, her job duties and pay were not affected.

During the July 2004 telephone call, Cameron also suggested that Plaintiff's "reintegration into ADC would be easier if [he] placed her in a position at TC/Tucker Unit instead of at SATP/Tucker Unit."[33]  Cameron reasoned that since the SATP program had become less managerial and more counseling intensive during Plaintiff's absence, Plaintiff would gain counseling skills more readily in the TC program.[34]

Following the telephone meeting, Plaintiff filed a complaint with the Veteran's Employment and Training Service Office, an arm of the U.S. Department of Labor.[35]  A JAG[36] officer investigated the complaint and contacted Defendant Norris.[37]   Because of Plaintiff's displeasure with the suggested changes and the JAG officer's contact with Defendant Norris, Plaintiff returned to work

_____

[31]Doc. No. 14-3.

[32]*Id.*

[33]*Id.*

[34]*Id.*

[35]Doc. No. 21-2, p. 4.

[36]Judge Advocate General

[37]Doc. No. 24, p. 3.

at her previous SATP/Tucker position.  Also, at no time was Plaintiff's position number or rate of pay decreased.[38]

In reference to the lack of keys or phone codes, Defendant Albritton, an African-American male, maintains that it was simply an oversight.  When Plaintiff complained about not having a filing cabinet key, Albritton had one made for her.  After several prisoners stole phone codes to make outside calls, restrictions were introduced on who could have a phone code.  Albritton had no authority to issue a phone code; however, Plaintiff was provided with one as soon as she asked.

Plaintiff also argued that she was denied access to classification meetings.  Albritton, a SATP program leader, took over those meetings during Plaintiff's absence and continued to do so upon her return.  Once Plaintiff let Cameron know that she wanted to handle the meetings again, Cameron assigned her to do so.

Plaintiff maintains that she was intentionally denied training; however, "[a]n employer's denial of an employee's request for training is not, without more, an adverse employment action."[39]

In January 2005, Plaintiff received what she considered an unsatisfactory performance evaluation. Plaintiff's overall performance was rated 2.93, a "satisfactory" rating.  After an internal investigation, Plaintiff's overall performance was raised to a 3.0, which is still a "satisfactory" rating. The evaluation did not affect Plaintiff's rate of pay or position.

An "adverse employment action" is a "material employment disadvantage, such as a change in salary, benefits or responsibilities."[40]  It includes decisions such as failing to promote, or

---

[38]*Id.*

[39]*Griffith v. City of Des Moines*, 387 F.3d 733, 737 (8th Cir. 2004).

[40]*Ledbetter v. Alltel Corporate Services, Inc.*, 437 F.3d 717, 724 (8th Cir. 2006); *Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005).

reassigning an employee to a position with significantly different responsibilities.[41]  "A materially adverse action must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.' There must be a material change in employment status-a reduction in title, salary, or benefits."[42]  In *Curby v. Solutia, Inc.*,[43] the Eighth Circuit held that no adverse employment action has occurred simply by a change of position if there was no reduction in pay or benefits.

Because Plaintiff's pay and employee grade never changed, Plaintiff has failed to show that she suffered an adverse employment action.  It is evident that Plaintiff and Albritton had a tense relationship upon her return; however, there is no evidence of an actionable harm.  The Eighth Circuit has said that "[n]ot everything that makes an employee unhappy is an actionable adverse action."[44]  I do not doubt that Plaintiff was dissatisfied with her work assignments upon her return, but Plaintiff has presented no appreciable evidence of discriminatory animus.  Defendants Cameron and Albritton are entitled to qualified immunity because no evidence of a subjective intent to discriminate has been presented; so Defendants Cameron and Albritton are DISMISSED.

## C.    Retaliation

---

[41]*Ledbetter v. Alltel*, 437 F.3d at 724; *Forshee v. Waterloo Indus., Inc.*, 178 F.3d 527, 530 (8th Cir. 1999).

[42]*Box v. Principi*, 442 F.3d 692, 696 (8th Cir. 2006); *Wenzel v. Missouri-American Water Co.*, 404 F.3d 1038, 1042 (8th Cir. 2005) (*quoting Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994)).

[43]*Curby v. Solutia, Inc.*, 351 F.3d 868, 873-74 (8th Cir. 2003).

[44]*Tuggle v. Mangan*, 348 F.3d 714, 720 (8th Cir. 2003) (*quoting Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997)).

Plaintiff claims that the ADC and its employees retaliated against her for filing a discrimination claim with the EEOC. Title VII prohibits employers from retaliating against employees who file charges of discrimination or who assist others in opposing discrimination.[45]

Plaintiff filed a complaint with the EEOC on December 9, 2004, alleging racial and sexual discrimination and retaliation for the period between July 13, 2004 to October 14, 2004. Plaintiff filed a second claim with the EEOC on April 5, 2005, alleging that she was retaliated against as a result of her first EEOC filing by being given a "satisfactory"performance evaluation, denied training, and subjected to different terms and conditions of employment compared to her co-workers.[46]

To establish a *prima facie* case of retaliation, a plaintiff must show that she engaged in statutorily protected activity, that the defendant took adverse action against her, and a connection between the two.[47]  The defendant may then rebut the plaintiff's case by showing a legitimate, nonretaliatory reason for the adverse employment action.[48]  "If the defendant makes this showing, the plaintiff must show that the defendant's proffered reason was a pretext for illegal retaliation."[49]

Plaintiff has failed to establish that she suffered from an adverse employment action. Foremost, a "satisfactory" evaluation can hardly be considered an adverse action.  Plaintiff filed her first EEOC charge on December 9, 2004, but she has failed to note a single incidence of training she

---

[45]42 U.S.C. § 2000e-3(a).

[46]Doc. No. 2.

[47]*Montandon v. Farmland Industries, Inc.*, 116 F.3d 355 (8th Cir. 1997).

[48]*Shanklin v. Fitzgerald*, 379 F.3d 596, 603-604 (8th Cir. 2005).

[49]*Id.*

was denied after this date.  Finally, although Plaintiff was reassigned to three months of SATP training at the Varner Unit, reassignment alone is not proof of retaliation. Plaintiff was not demoted, her pay remained the same and her employment grade remained the same. Basically, the move was a lateral one made so that she could be personally trained.[50]   Because Plaintiff has not established that Defendant treated white or male employees differently than minorities or female employees, Defendant's Motion for Summary Judgment on Plaintiff's retaliation claim is GRANTED.

### D.    USERRA

Defendants argue that this Court lacks jurisdiction over Plaintiff's USERRA claim. Although the Eighth Circuit has not addressed the issue of whether state courts have exclusive jurisdiction over USERRA claims against state employers, it is clear from the language of 38 U.S.C. § 4323 that jurisdiction over USERRA claims by individuals against state employers does not lie only in federal court.[51]   Plaintiff correctly argues that I need not reach the decision whether USERRA provides exclusive jurisdiction because I can exercise pendant jurisdiction of the claim.[52]

An employer violates the USERRA "when a person's membership in the uniformed services is a motivating factor in the employer's action, 'unless the employer can prove that the action would have been taken in the absence of such membership, . . . or obligation for service.'"[53] "Unlike the *McDonald Douglas* framework, the procedural framework and evidentiary burdens set out in § 4311

---

[50]Doc. 15, p. 22.

[51]*See* 38 U.S.C. § 4323(b)(2) ("in the case of an action against a State (as an employer) by a person, the action may be brought in a State court . . . .").

[52]28 U.S.C. § 1331.

[53]*Maxfield v. Cintas Corp. No.* 2, 427 F.3d 544, 551 (8th Cir. 2005).

shift the burden of persuasion, as well as production, to the employer."[54] Under USERRA, an employee must make "an initial showing . . . that military status was at least a motivating or substantial factor in the [employer's] action."[55] If the employee makes such a showing, "the [employer] must prove, by a preponderance of evidence, that the action would have been taken despite the protected status."[56] USERRA, however, does not require employers to provide more favorable treatment to military reservists.[57]

A court can infer discriminatory motivation under the USERRA from a variety of considerations, such as: proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.[58] But, Plaintiff must show that she suffered an adverse employment action; and Plaintiff has not done so. Her USERRA claim is DISMISSED.

## IV.    Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED, and Plaintiff's claims are DISMISSED.

---

[54]*Id.*

[55]*Id.*

[56]*Id.*

[57]*Id.*; *see Monroe v. Standard Oil Co.*, 452 U.S. 549 (1981).

[58]*Coffman v. Chugach Support Services, Inc.*, 411 F.3d 1231 (11th Cir. 2005).

IT IS SO ORDERED this 20th day of June, 2006.


/s/ Wm. R.Wilson,Jr._____
UNITED STATES DISTRICT JUDGE